IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| V | ) | Criminal Action |
| ARTHUR RAY HANSON, II | ) | No. 1:24-CR-00184 |

**DEFENDANT ARTHUR RAY HANSON, II'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

The "punishment should fit the crime". Mr. Hanson readily accepted responsibility for what he did. He agrees wholeheartedly his two voicemails were completely inappropriate on many levels and pledges to refrain from similar conduct in the future. By many accounts, Mr. Hanson is an upstanding citizen: a hard-working insurance broker who actively participates in his church and broader local community. He continues to act in this fashion. Mr. Hanson has had challenges with substance abuse, bi-polar disorder, and disorientating grand mal seizures.

With all due respect, the United States of America shouldn't be a nation where a mentally ill, intoxicated person leaves two voicemails on a customer service line (both just over a minute long) and lands in federal prison for years. The two voicemails are not reflective of the person Arthur Ray Hanson II is. Mr. Hanson is a hard worker, an active participant in his community and active participant at his church. He has raised a son as a single father; he is a talented piano player and an overall good soul. He has been generous with his time and resources in his community. He is a regular contributor to St. Jude Children's Hospital, Wounded Warrior

1

Project, and pays tithe to the Rock Family Worship Center in Huntsville. We are respectfully requesting this Honorable Court court exercise its broad power to impose a sentence that is non-custodial for the reasons set forth in this sentencing memorandum. Imposing a sentence of probation, home confinement and community service would better serve the objectives of the Sentencing Guidelines and promote fairness and justice and the aims of our Society rather than incarceration.

## II.      POST ARREST BEHAVIOR

Mr. Hanson's behavior post arrest is nothing short of admirable. While he is a staunch Republican and supporter of President Trump, he acknowledges his actions were wrong regardless of the political and first amendment overtones in this case.  Many people would have used this situation as an opportunity to give themselves a megaphone and martyr themselves in the public eye, but Mr. Hanson did not because he is a person of character. He is genuinely remorseful for the words used in the phone calls.

Mr. Hanson is self-aware. He recognizes the negative issues he has had with the law, his family and his community are directly related to substance abuse, mainly alcohol. He is fully cognizant of how his alcohol abuse was a direct underlying cause of his inappropriate and illegal telephone calls forming the gravamen of the complaint filed against him. In this context, it should be emphasized that Mr. Hanson suffers from grand mal seizures. His physician prescribed Levetiracetam (Keppra) for his condition. However, when he is using substances (alcohol and marijuana), he does not remember to take his medication as prescribed. He then suffers from seizures more frequently, loses touch with reality and becomes a person his family, community

and himself do not recognize. He does not disclose this condition as an excuse. Instead, the information is offered to place his misconduct in the proper perspective.

The media has created a veritable "Serbonian bog," when it comes to American politics today. The misinformation and landscape couldn't be more toxic and confusing. As a Society, we are bombarded with media political hype virtually every minute of every day. There is no doubt any person must make a conscious effort to avoid the deleterious effect of the media blitz and not let it impact their daily life. This, coupled with Mr. Hanson's fragile mental state at the time lead to the perfect storm causing him to violate the law. Mr. Hanson does not remember making the telephone calls; however, he does not deny making them and accepts full responsibility for his actions.

Mr. Hanson understands he must make serious changes in his life when it comes to sobriety and anger issues. He is acutely aware the two go hand in hand. Mr. Hanson has been working on his sobriety and attending AA meetings since March 2024. Please find attached proof of his regular attendance at AA from March until present as Exhibit C.

Attached as Exhibit D to this memorandum, please find Mr. Hanson's Certificate of Completion of a 16-hour Anger Management Course. Included are his handwritten notes to verify he took the course seriously as opposed to just going through the motions.

Prior to his arrest Mr. Hanson was never evaluated or treated for a mental disorder. He was evaluated by licensed Psychologist Dr. Roger C. Rinn. Mr. Hanson was diagnosed with Bipolar II Disorder, Obsessive-Compulsive Personality Disorder and severe Alcohol Use

Disorder. The pertinent portions of Dr. Rinn's findings are attached as Exhibit B to this memorandum.

Mr. Hanson recognizes he was absorbing and participating in an inordinate and unhealthy amount of political news and social media. He has made great strides to curb that and now only reads the news on a normal basis and is not actively participating on social media.

### III.   COMMUNITY AND FAMILY TIES

Mr. Hanson is a hardworking and generous; he is a positive influence in his community. Mr. Hanson is 59 years old. He has worked as an independent insurance agent since 1990. He obtained his GED and completed some college. He resides in Huntsville, Alabama. Huntsville is a small tight knit community where his close relatives reside. Attached as Exhibit A, please find letters to this Honorable Court requesting mercy in Mr. Hanson's case. These are not "form" letters but are individually unique and paint an accurate picture of who Mr. Hanson is. The people in Mr. Hanson's community recognize he has made a grave error, however no one in his community believes incarceration is appropriate or beneficial to society.

Mr. Hanson's 19-year-old son resides with him. Mr. Hanson's mother Mrs. Judy Farris is 80 years old and was recently diagnosed with stage IV cancer. If incarcerated, Mr. Hanson will be unable to offer comfort and care at the end of her life, or care for his young adult son. Mr. Hanson's is incredibly close with his mother. He and his family have been devasted by the diagnosis. Mr. Hanson's family have been counting on him to participate and contribute to his mother's care.

This case gained national attention. The tight knit community of Huntsville is aware of his situation. By taking responsibility and entering a plea, Mr. Hanson will be a convicted felon who will no longer be able travel and act as an insurance agent and/or retain his insurance license. He is going to put in place alternative work arrangements to cover his living expenses. Mr. Hanson has received threatening and strange phone calls due to his case receiving national attention. These calls have made him deeply empathetic with the victim over his own actions in this matter.

## IV.     CRIMINAL BACKGROUND

Mr. Hanson has been convicted seven times for misdemeanors spanning from 1984 to 2023. This is his first felony conviction. The prior convictions are outlined in the final Presentence Investigation Report. The convictions are very consistent in the respect they all involve use of alcohol and controlled substances. They are also consistent in that it does not seem Mr. Hanson's substance abuse has ever been evaluated and curbed before. If these clear issues had at any point been addressed, I doubt Mr. Hanson would be in this Honorable Court today. Mr. Hanson has been receptive and partaking willingly in AA since March 2024. Rather than incarceration at the expense of the American taxpayer, an alternative sentence involving home confinement with a focus on treatment for mental issues and substance abuse would better serve to protect Society and Mr. Hanson himself from another episode.

## V.     LEGAL ANALYSIS

There is no statutory requirement that Mr. Hanson be sentenced to a term of confinement. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to

comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

We most respectfully submit a lengthy period of probation would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." During this time, the defendant would be answerable to the U.S. Probation Office. He would be subject to the jurisdiction of the Court and know that any infraction could lead to revocation of the probationary term, with incarceration to follow. Such a term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior. A lengthy term of probation would also deter generally others from engaging in conduct like the actions in this case.

## VI.  **PRESENTENCE INVESTIGATION REPORT**

On or around May 14th, 2024 the United States Attorney's Office made a formal plea offer in this case. The offer is attached as Exhibit E and states the following "…place Mr. Hanson at 15 with an advisory guideline range of 18-24 months…we would recommend a sentence at the low end of the guideline range." On August 12th, 2024 the initial Presentence

Investigation Report was presented with a total offense level of 14 and a custody guideline range of 18 to 24 months. This report was received via email by both parties on August 13th, 2024.

The United States Attorney's Office objected. The United States Attorney's Office then based on the objection asked for a total offense level of 17 instead of 14 and 27-33 months instead of 18-24 months.

On August 23rd, 2024 undersigned attorney contacted the United States Attorney's office for clarification as to why there was a deviation from the original formal plea offer.

On August 28th, 2024 the United States Attorney's Office wrote via email to Sr. U.S. Probation Officer Logan "the 2-level enhancement that you've preliminarily applied under 2A6.1(b)(2)(A). That enhancement applies only when the offense involves more than two threats, and here, it's not clear that the third threat—the Secretary Mayorkas call—qualifies as relevant conduct. As I read the definition of relevant conduct under 1B1.3, it only includes all acts committed by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. Based on the plain text, there seems to be an argument that the Secretary Mayorkas call doesn't fit into any of those categories."

There was an open discussion regarding this matter via email and the question was proposed by Sr. U.S. Probation Officer Logan "do you want me to include this as objections for both parties or do you want to discuss further first? The United States Attorney's Office replied "it probably makes more sense if it's a defense objection, but I'm fine however you want to handle."

### A. Objection to Paragraph 39

The alleged call to Homeland Security Secretary Alejandro Mayorkas did not occur during the commission of the offense of conviction, in preparation for that offense or while attempting to avoid detection or responsibility for that offense. Therefore, this increase by two levels would not apply as it does not fall within the definition of relevant conduct pursuant to 1B1. Undersigned counsel was unaware of any such call until it was mentioned in the Initial Presentence Investigation Report. The United States Attorney's office and undersigned counsel agree this increase would be improper.

### B. Objection to Paragraph 40

The Government's objection to paragraph 40 should not be sustained. The Defendant states the application had been previously applied correctly. Pursuant to U.SS.G section 3A1.2(b), if (1) the victim was (A) a government officer or employee; and (2) the offense of conviction was motivated by such status, increase by three (3) levels. District Attorney of Fulton County and the Sheriff of Fulton County were targeted based on their position and the investigation of President Trump. Respectfully, The Governments objection does not make sense pursuant to statute on the basis that it is an offense against a person. The offense fits exactly into U.SS.G section 3A1.2 (b)

In the Presentence Investigation Report on page 23 in Response it states "the probation officer notes with an adjusted offense level of 15, the defendant would only be entitled to a two-level reduction for Accetpance of Responsibility which would make the total offense Level 13 with a Custody Guideline Range of 15 to 21 months."

The Custody Guideline Range should be respectively, 12 instead of 13. It certainly should not be 17 based on the formal plea offer and based on a transparent discussion with the Government. This would lead to a guideline range of 10 to 16 months.

## VII. RECENT SENTENCES OF INTERSTATE THREATS VIA VOICEMAIL AND JANUARY 6TH, 2021 CAPITOL RIOT SENTENCES

On August 24th, 2023 **Joseph F. Morelli**, age 51, of Endicott, New York was sentenced to serve three months in prison for making threatening phone calls from his home to the voicemail in the office of a member of Congress in Washington, D.C.

**Zvonimir Joseph Jurlina**, 31, of Bethpage, New York, was sentenced to 14 days in prison, two years' probation and **ordered** to pay a combined $510 after pleading guilty to an act of physical violence at the Capitol.

**Suzanne Ianni**, 59, of Natick, Massachusetts, an activist with the far-right Super Happy Fun America group, according to court documents, was sentenced to 15 days in prison, 30 months' probation, 60 hours of community service and ordered to pay a combined $510 after pleading guilty to disorderly conduct.

**Treniss Jewell Evans III**, 46, of Canyon Lake, Texas, was sentenced to 20 days of intermittent incarceration—meaning the sentence can be served at weekends— three years of probation and ordered to pay a combined $5,525 after pleading guilty to one count of entering and remaining in a restricted building.

**Simone Melissa Gold**, 55, of Beverly Hills, California, was sentenced to 60 days in prison, a year of supervised release and ordered to pay a combined $10,025 after pleading guilty to one charge of entering and remaining in a restricted building.

**Shelly Varney**, 46, of Sanford, Florida, was sentenced to 24 days in prison, a year of supervised release and ordered to pay a combined $1,550 after pleading guilty to two charges, including theft of government property.

**Carol O'Neal Kicinski**, 64, of Dunedin, Florida, was sentenced to 20 days in prison, a year of supervised release and ordered to pay a combined $525 after pleading guilty to entering and remaining in a restricted building.

## **CONCLUSION**

"There is a difference between the people we are mad at and the people we are scared of." Society certainly has a reason to be mad at Mr. Hanson but his background and place in the community clearly demonstrate he is not someone to fear because he is not a danger to the community. Comprehensive coverage of this event and subsequent arrest of Mr. Hanson and other incidents demonstrates the Government has made serious efforts to prosecute persons engaging in behavior of the kind Mr. Hanson committed. Indeed, broad media attention will undoubtedly continue through sentencing in this case. The public will be aware of the defendant's responsibility for his conduct, which will serve to deter others in the future in similar situations. Given the defendant's disability and his continued reliance on medication, a non-custodial sentence instead of an institutional setting would ensure proper treatment of medical needs. would better assure his continued medical needs. The defendant submits that a probationary term would satisfy the various §3553 factors. Additionally, if this Honorable Court believes community service is appropriate then it could be imposed with no objection from the defendant.

Finally, if this Honorable Court believes that incarceration, not probation, is appropriate, then the defendant requests that he be able to serve his time in home confinement. In the event the Court feels incarceration in a federal correction institute is necessary, Mr. Hanson is respectfully requesting the court recommend a facility close to his hometown of Huntsville, Alabama. FPC Montgomery located at Maxwell Air Force Base Montgomery, Al 36112. This would facilitate the ability of Mr. Hanson's family to visit him and possibly allow him to see his terminally ill mother.

Respectfully Submitted,

ARTHUR RAY HANSON, II, DEFENDANT

BY: _____/s/ Tyler Wolas

Timothy Mays GAB#742438

Tyler S. Wolas FLB#86283

ATTORNEYS FOR DEFENDANT

OF COUNSEL:

__/s/ Timothy Mays_____

Timothy Mays, Esq.

3780 Old Norcross Rd. Suite 103

Duluth, GA 30096

Tel: (678) 404-2706

Fax: (678) 281-1314

Tmays32@gmail.com

Wolas Law Group, PLLC

3959 Van Dyke Road #95

Lutz, Fl 33558

Tel: (727) 831-0173

Tylerswolas@gmail.com