IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ARTHUR RAY HANSON, II | Criminal Action No.<br><br>1:24-CR-184 |

# GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America, by Ryan K. Buchanan, United States Attorney, and Bret R. Hobson and Brent Alan Gray, Assistant United States Attorneys for the Northern District of Georgia, files this response to the defendant's sentencing memorandum. As explained further below, this Court should sentence Defendant Arthur Ray Hanson, II to the low end of the applicable guidelines range. Such a sentence best comports with the purposes of federal sentencing as enumerated in the federal sentencing statute, 18 U.S.C. § 3553, and is sufficient, but not greater than necessary, to effectuate those purposes in this case.

## Background

### A.   Procedural History

On October 25, 2023, a federal grand jury indicted Hanson with two counts of transmitting threats in interstate commerce, one against Fulton County Sheriff Patrick Labat and the other against Fulton County District Attorney Fani Willis, both in violation of 18 U.S.C. § 875(c). (Doc. 1 in Case No. 1:23-CR-343-JPB.) On

June 18, 2024, Hanson pled guilty to a criminal information that combined the two threats into one count, and this Court accepted the guilty plea on July 3, 2024.  (*See* Docs. 1, 4, 5, 10, and 11 in the instant case.)

### B. Offense Conduct

The presentence investigation report (PSR) accurately recites the details of the charged offense.  (*See* PSR ¶¶ 5-31.)  In short, following media reports in the summer of 2023 that District Attorney Willis was conducting a grand jury investigation into Former President Donald Trump and that Sheriff Labat would process Trump like any other inmate if Trump were indicted, Hanson called the Fulton County customer service line and left voicemails threatening District Attorney Willis and Sheriff Labat.  (*Id.* ¶¶ 6-9.)  First, Hanson threatened Sheriff Labat at approximately 11:25 a.m. on August 6, 2023:

> Hey, this message is for Pat Labat.  It's sorry [expletive] little uh pieces of [expletive] like you is why the South should have won.  We let you uh we let-we let you little monkeys in charge, and you don't know how to act.  So if you think you gonna take a mugshot of my President Donald Trump and it's gonna be ok, you gonna find out that after you take that mugshot some bad [expletive]'s probably gonna happen to you.  It's probably gonna be when you're not looking, and it's not gonna happen from me.  I'm not threatening you.  I'm just telling you that if you take a mugshot of the President and you're the reason it happened, some bad [expletive]'s gonna happen to you.  So I'm warning you right now before you [expletive] up your life and you get hurt real bad by some people that are really gonna be upset with you, which it ain't me.  I'm just telling you, a [expletive] like you [unintelligible] big bad [expletive] thing that they're doing is probably gonna get [expletive]ed up in a really really bad way.  So I would give great consideration to the fact that you're gonna try to take a mugshot of the next President, because if you do, your little black [expletive] is

2

probably gonna get [expletive]ed up.  Do you understand me, boy?  Do you understand what I'm telling you?  You're [expletive]ing with the wrong people, son.  Whether you got a [expletive] badge or not ain't gonna help you none.  You gonna get [expletive]ed up you keep [expletive]ing with my President [pause] all of you ni… I almost said it cuz that's what you are, and you know what you are, a sorry ass and you fill in the blank, [expletive].

(*Id.* ¶ 8.)  Approximately two minutes later, Hanson called back threatened District Attorney Willis:

Hey, Fani.  Hey, Fani.  Fat [expletive] Fani, the one that's gonna be charging Trump the fourth indictment.  Watch it when you're going to the car ok.  Watch it when you're going to the car at night, when you're going into your house, watch everywhere that you're going because there's gonna be people out there that are gonna be trying to get you.  So I would be very afraid if I were you because you can't be around people all the time that are going to protect you.  So there's gonna be moments when you're gonna to be vulnerable, and I'm just I don't want anything bad to happen to you.  So watch your big fat black [expletive].  Watch your back. I know you got a big backside, but you need to watch it, you ugly ass little [expletive].  So when you- when you charge Trump on that fourth indictment, anytime you're alone, be looking over your shoulder, because I've been informed that there's people that'll gonna wanna [expletive] you up, not just you but your whole entire [expletive]ing piece of [expletive] family.  So all you sorry ass coons that are coming after uh-uh Trump because you got this power then watch your back, because there's gonna be people coming after you that you never dreamed of.  And you think because you're a -a officer of the law that's gonna protect you, it's not.  It's gonna be bad, and you're gonna regret the day you were ever [expletive]ing born ok.  So enjoy your time in the spotlight, because when the light ain't on you [five seconds of laughing] what you put out there, [expletive], comes back at you ten times harder, and don't ever forget it.

(*Id.* ¶ 9.)

Sheriff Labat and District Attorney Willis both felt threatened and concerned for their families. (*Id.* ¶¶ 11, 29-30.) And both increased their and their families' security as a result. (*Id.* ¶¶ 11, 30-31.)

FBI agents traced the calls to Hanson's cellular telephone at his residence in Alabama. (*Id.* ¶ 12.) When agents approached Hanson and asked him about the calls, Hanson initially denied making the calls and lied that he did not know who Sheriff Labat and District Attorney Willis were. (*Id.* ¶¶ 14-15.) After agents played the calls for him, Hanson admitted that he was angry about the Trump indictment in Fulton County and stated that he only intended to curse out Sheriff Labat and District Attorney Willis and make them feel uncomfortable and that he would never actually harm them. (*See id.* ¶¶ 16-20, 23-24, 26.) Agents admonished Hanson and advised him to stop making threatening calls. (*Id.* ¶ 27). Hanson stated that he understood and would refrain from making any more calls. (*Id.*)

### C. Post-Offense Conduct

Approximately one month after assuring agents that he would not make any more calls, Hanson called the tip line of the New Jersey Office of Homeland Security and Preparedness to complain about a New Jersey Counterterrorism initiative. (*Id.* ¶ 32-33.) During the call, Hanson stated that Alejandro Mayorkas, the U.S. Secretary of Homeland Security, should be hanged. (*Id.* ¶ 33.)

### D. Guidelines Calculation

Hanson is to be sentenced using the 2023 Guidelines Manual, as amended. (*Id.* ¶ 37.) The PSR correctly notes that § 2A6.1 is the applicable guideline for this § 875(c) violation and that the base offense level is 12 under § 2A6.1(a)(1). (PSR ¶ 38.)

The PSR then suggests applying § 2A6.1(b)(2)(A), which adds a 2-level enhancement when the offense involves more than two threats. (PSR ¶ 39.) As explained below, the government agrees with Hanson's objection that this enhancement does not apply here.

Next, the PSR correctly applies a 6-level enhancement under § 3A1.2(b) because the victims were government officers, the offense of conviction was motivated by such status, and the applicable guideline—specifically, § 2A6.1—is from Chapter Two, Part A of the U.S. Sentencing Guidelines. (PSR ¶ 40.)

Finally, the PSR correctly applies a 3-level downward adjustment for acceptance of responsibility. (PSR ¶¶ 45.) Accordingly, Hanson's proper guidelines calculations are as follows:

- Base offense level under § 2A6.1(a)(1) = 12
- Enhancement under § 3A1.2(b) (official victim) = +6
- Adjustment under § 3E1.1 (acceptance of responsibility) = -3
- TOTAL OFFENSE LEVEL = 15

With a total offense level of 15 and a criminal history in category II, Hanson faces an advisory guidelines range of 21-27 months of imprisonment. And, as

explained further below, the government respectfully submits that a low-end sentence of 21 months of imprisonment is an appropriate sentence in this case.

## Argument and Citation of Authority

**1. Because the offense of conviction did not involve more than two threats, the 2-level enhancement under § 2A6.1(b)(2)(A) does not apply.**

Section 2A6.1(b)(2)(A) states that if "the offense involved more than two threats . . ., increase by 2 levels." § 2A6.1(b)(2)(A). And application Note 1 to § 2A6.1 explains the scope of conduct to be considered in determining whether to apply subsection (b)(2): "the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole." § 2A6.1 cmt. 1. In addition, § 1B1.3(a)(1)(A) defines the "relevant conduct" that affects the guideline range, including: "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred *during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense*." § 1B1.3(a)(1)(A) (emphasis added).

Even assuming that Hanson's subsequent call in which he suggested Secretary Mayorkas should be hanged contained a prosecutable "true threat," the call occurred after the offense conduct. Per the aforementioned application note, this later threat likely is not within the scope of conduct to be considered in determining whether to apply subsection (b)(2). Moreover, nothing in § 1B1.3

6

suggests that this later call qualifies as relevant conduct when it did not occur during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.  Accordingly, the offense of conviction involved only two threats, not more than two, and the 2-level enhancement under § 2A6.1(b)(2)(A) therefore does not apply.

**2. Because the applicable guideline for this offense is found in Chapter Two, Part A (Offenses Against the Person), a 6-level enhancement applies under § 3A1.2(b) rather a 3-level enhancement under § 3A1.2(a).**

Section 3A1.2 instructs the Court to apply the greatest of three possible enhancements when an offense involves an official victim.  First, subsection (a) calls for a 3-level enhancement if the victim was "a government officer or employee" and "the offense of conviction was motivated by such status." § 3A1.2(a)(1)(A) and (a)(2).  Second, subsection (b) raises the enhancement to 6 levels "[i]f subsection (a)(1) and (a)(2) apply" and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person)." § 3A1.2(b).  Finally, subsection (c) does not apply in this case.

In his sentencing memo, Hanson appears to concede, as he must, that § 3A1.2(a)(1)(A) and (a)(2) apply.  (*See* Doc. 15 at 8.)  And he does not contest that § 2A6.1 provides the applicable Chapter Two Guideline.  Thus, by the plain terms of § 3A1.2(b), a 6-level enhancement applies here.

Nevertheless, Hanson appears to suggest that the government's position deviates from its initial plea offer and that the Court thus should apply the lower

7

3-level enhancement.  (*See* Doc. 15 at 7-8.)  To the contrary, the government has always maintained that the 6-level enhancement under § 3A1.2(b) would likely apply.  (*See* Doc. 15 at Exh. E (email that Hanson attached to his sentencing memo).)  Moreover, even if the government had suggested the 3-level enhancement might apply instead (again, the government did not), the government explicitly cautioned Hanson that the government's preliminary guideline "estimations are frequently wrong at [the plea-offer] stage and should not be relied upon in lieu of Probation's and the Court's final determination." (*Id.*)[1]  Furthermore, Hanson agreed in the written plea agreement that he understood the following: "before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines" and "no one can predict his exact sentence at this time."  (Plea Agreement ¶ 8.)  Today, the government honors its promise "to recommend that the Defendant [Hanson] be sentenced at the low end of the adjusted guideline range."  (*Id.* ¶ 17.)

---

[1] Incidentally, the only portion of the government's emailed pre-plea estimation that it now believes was wrong is that Hanson is in criminal history category II instead of I due to some convictions of which the government was then not aware.  Assuming the Court agrees with the government's suggested guideline calculations, Hanson's guideline range will thus be 21-27 months' incarceration instead of the 18-24 months the government preliminarily estimated.

3. **The § 3553(a) factors support a low-end sentence of 21 months' incarceration in this case.**

At sentencing, the Court must first correctly calculate the applicable guidelines range, and then it may weigh the § 3553(a) factors in determining the appropriate sentence.  Section 3553(a) requires district courts to consider the following factors in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to provide general deterrence, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with any needed educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the advisory guidelines range; (5) the guidelines' policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution.  18 U.S.C. § 3553(a)(1)–(7).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

Here, the nature and circumstances of the offense are very serious.  Using racist, expletive-filled language, Hanson threatened the victim public officials and their families simply for the officials carrying out their duties.  As a result, these officials understandably felt threatened and were concerned for their families' safety, and they took steps to increase their and their families' security.

In addition, Hanson's history and characteristics provide reason for concern. While it is laudable that, as a result of this prosecution, Hanson has begun to address any issues he has with alcohol and anger, he nevertheless has a history of making threats that goes back to at least 2018 when, in another case in which he was convicted, he "did contact the complainant's place of business via telephone numerous times leaving voicemails threatening harm to the complainant and his job." (PSR ¶ 55.) Further, it is troubling that a mere month after promising FBI agents that he would refrain from making threatening calls, he again called a government agency and suggested an official should be hanged. (*See id.* ¶¶ 32-33.)

A 21-month low-end sentence adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The need to provide general deterrence is particularly important in these polarized times, so others know that when they threaten public officials, they will face serious punishment that includes time in prison time. In addition, this time in prison will protect the public from Hanson continuing to make threatening calls.

Finally, a 21-month low-end sentence would avoid unwarranted sentencing disparities when this Court recently sentenced another defendant to 24 months in prison for threatening public officials and election workers. (*See United States v. Stark*, 1:23-CR-271-JPB at Doc. 16.)

## Conclusion

For the foregoing reasons, this Court should sentence Hanson to the low end of the applicable guideline range, 21 months in prison.

Respectfully submitted,

RYAN K. BUCHANAN
   *United States Attorney*

/s/BRET R. HOBSON
   *Assistant United States Attorney*
   Georgia Bar No. 882520
   Bret.Hobson@usdoj.gov

/s/BRENT ALAN GRAY
   *Assistant United States Attorney*
   Georgia Bar No. 155089
   Brent.Gray@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

> Tyler Wolas
> Wolas Law Group, PLLC
> 3959 Van Dyke Road
> Lutz, FL 33558
>
> Timothy Maurice Mays
> Mays and Associates, LLC
> 3780 Old Norcross Rd, Suite 103
> Duluth, GA 30096
>
> *Attorneys for Defendant Arthur Ray Hanson, II*

October 25, 2024

> /s/ BRET R. HOBSON
> BRET R. HOBSON
> *Assistant United States Attorney*